Good morning, and may it please the Court. Emily Grondyke from the Office of the Federal Public Defender, on behalf of Petitioner Appellant Michael Rose. I'd like to reserve three minutes of my time for rebuttal. This case presents two serious Sixth Amendment claims, and unless the Court prefer a different order, I will address Mr. Rose's Strickland claim first. Regarding this claim, the District Court correctly concluded that the claim in its entirety must be reviewed de novo. It is not subject to the restrictions of Section 2254 D because the last reasoned decision by the state court did not decide the merits of either prong. In this claim, Mr. Rose alleges that his attorney was ineffective for failing to present available testimony that would have undermined the main prosecution witness and corroborated Rose's testimony in his own defense. Now, normally courts defer to a trial attorney's reasonable tactical decision making, but that deference does not apply in this case because the record There are two main categories of evidence that I'd like to address. First, there were witnesses who were available to impeach Mr. Denman's statement that Rose carried a gun. Now, trial counsel during the Marsden hearing stated that those witnesses were simply unnecessary because Mr. Denman had already admitted that Rose didn't have a gun. But the record shows that's just not true. Mr. Denman testified three different times during the trial that he was pretty sure that Mr. Rose did have a gun. Although he said he didn't see it, he did say, I'm pretty sure he had one. He was also impeached with his own preliminary hearing testimony, which included an affirmative statement that Mr. Rose did have a gun. And the jury was actually instructed that that testimony could be considered not just as statements that Mr. Rose affirmatively did not have a gun would have been redundant with anything that happened at trial. Evidence is a misunderstanding of the either the available testimony or of the evidence as it stood. Presenting this evidence would have been very important for any attorney. Any reasonable attorney would have wanted to present this evidence because if the jury believed that it would also be important to any reasonable attorney to impeach Mr. Denman and undermine his credibility. Because as discussed at length in the briefs, this trial was essentially a credibility contest between the two main prosecution witnesses, Mr. Denman and his mother versus Mr. Rose, who testified uncorroborated in his own defense. And the impeachment evidence would be that the video, the impeachment evidence would be the video and also the testimony of witnesses who heard Mr. Denman say Mr. Rose never had a gun. Those witnesses are named Bell and Bolden, Africa Bolden and Charlene Bell. And they each of them could have testified about Mr. Denman's prior admissions that Mr. Rose never had a gun. Now, the district court dismissed those admissions and said they weren't, that they would not have been admissible at trial. But that's premised on the idea that they were prior consistent statements and premised on the notion that Mr. Denman admitted at trial that Rose never had a gun. But as I mentioned before, that's just not an accurate statement of the record. As I understand it from the record, and correct me if I'm wrong, the issue of the video being available as impeachment evidence was brought up for the first time in the second state habeas petition? Correct, Your Honor. It was first alleged in the second state habeas petition, which is the first time that Mr. Rose provided briefing on his Strickland claim. I couldn't tell from the record at what point during the proceedings the petitioner knew that there was a video available. It seems to me that the petition suggests that this was something that was given to a trial counsel prior to trial. Is that right? Your Honor, the petition alleges that the video was given to trial counsel before trial. The record is not clear about whether Mr. Rose was aware of that fact. The allegation is that members of Mr. Rose's family conveyed that video to trial counsel. But again, we don't know whether Mr. Rose was aware of it and it was not discussed during the Marsden hearing. That was going to be my question. I take it, I was trying to find somewhere in the record some mention of trial counsel either admitting or denying ever receiving the video. I didn't see anything like that. No, that's because the video wasn't discussed until the state habeas petition, which was denied summarily. So there was no opportunity to question counsel at that point. Now I imagine when government counsel argues, he's going to say, well, it couldn't have been prejudiced because a week or two after these murders occurred, your client was in Las Vegas with the bad guys. And so if he really was, you know, not in on it, why is he hanging out with them in Vegas a week later? What's your response to that? Well, Your Honor, that takes me to the second category of evidence that's at stake in this claim, which is evidence relating to threats that Mr. Rose's family received. The other part of this claim is his allegation that his mother and his sister would testify that they were threatened by members of Mr. Short's gang and that Mr. Rose's finding out about that threat is what caused him to go meet with Mr. Short's in Las Vegas. Now, counsel said, counsel had two reasons that he said he didn't present that evidence. First, he said he was afraid that it would have opened the door to rebuttal evidence. And second, he said that it would have been redundant with Mr. Rose's testimony in his defense. But those two explanations are in If Mr. Rose, as he did, testified about those threats, the door to any available rebuttal evidence was already open. And so that doesn't provide a reasonable tactical decision for counsel's failure to corroborate. For counsel to say that it was redundant with Rose's own testimony, I think just discounts the value of corroboration in this case. What we're looking at is a defense of duress premised entirely on Mr. Rose's testimony, which the jury would rightly view as self-serving. The prosecutor and counsel for co-defendants commented on that fact and said, you know, he didn't present a sister, he didn't present his mom, he didn't present anything except his own word. And so I think as this court recognized in Brown versus Meyer, putting up a defendant to testify in his own defense is a substantially weaker presentation than offering any corroboration for that testimony. You know, one of the things we asked for supplemental briefing on was the impact of 2254E2, and you, I think, correctly pointed to the Horton case. I've read that footnote in Horton, and I think it's a very good footnote for your argument in this case. I don't entirely understand everything they were saying, but that being said, I think it's a good footnote for you. Do you know of any cases subsequent to Horton that have tried to explain that footnote or have provided any other guidance in how to interpret 2254E2, or is that it? That's all that I'm aware of, Your Honor. I'm happy to... That's all I could find, so... Okay. I'm happy to look further, and if I find something, I'll submit a 28J letter. Moving to the question of prejudice, which I already started to touch on, presenting this evidence would have substantially undermined Mr. Denman's credibility. Right. I have a question on the prejudice. Could your client have been convicted of felony murder, even if everything Denman said was false? I mean, he was there. He drove the car. Well, if all of his actions were under duress, and if the jury believed a duress defense, then that would have provided a defense to all of the charges. So his testimony was that he never wanted to be involved in a robbery. He never wanted to be involved in a carjacking. And so the felony murder liability, if he had a defense to the underlying felonies, then he would not have been liable on felony murder. As I said before, the case was truly a credibility contest, and it's clear that the jury found this to be a close case. As I noted in the briefing, they submitted seven questions, most of which related to Mr. Rose's guilt, and then ultimately informed the court that they were deadlocked as to Mr. Rose only having convicted two other co-defendants. So thinking about any evidence that could have changed that credibility evaluation even a little bit might have made the difference in this close case. Now, what the district court said was that there was no prejudice because there was ample evidence that Mr. Rose willingly participated. But that's not the standard under Strickland. Under Strickland, the question is whether there's a reasonable probability that any juror would have reached a different conclusion. And in this case, I think given how close the evidence was, there's a strong argument to be made that at least one juror would have continued to have reasonable doubt. If the record demonstrates that, or if the record is unclear as to at what point he found out about the existence of the video, does that undermine his diligence in pressing this claim forward? I know that he did ask for an evidentiary hearing at the second state habeas petition, but is that enough? Under Horton, I think it is enough. And it should be noted, as Horton explains, his petition was summarily denied, so he hadn't even reached the appropriate stage in state court for seeking an evidentiary hearing. So the fact that he requested an evidentiary hearing was really above and beyond what was necessary at that stage. And it's also worth noting, Your Honor, that the video is not the only evidence at stake in this claim. There's witness testimony. So even if there's a question about the admissibility of the video or questions about diligence on the video, Mr. Rose has been pressing the issue of available witnesses and their testimony since the beginning. Are you arguing that there should be an evidentiary hearing in federal court now, or that there should be a remand to state court for an evidentiary hearing? At this point, Your Honor, there should be a remand to federal district court for an evidentiary hearing. I think that's typically what happens in these cases where the state court has already assessed the claim and denied an evidentiary hearing. You want to save the remainder of your time? You can reserve early if you want. Yes, I will do that. It's always an option. Good morning, Your Honors. May it please the Court, Deputy Attorney General Christopher Beasley. On behalf of the respondent, with respect to the availability of these witnesses Bell and Bolden, the Court of Appeal actually ruled that this was a tactical decision on the part of trial counsel that counsel decided I don't need these witnesses to testify because, A, what they have to offer was already offered by Denman. B, I don't want to undermine Denman's testimony because Denman's testimony actually supports Rose's testimony that he was a passive participant in this and didn't engage in any violence against Denman. And C, this evidence would have been inadmissible under the tactical, a reasonable tactical decision not to call Bell and Bolden to testify. But he knew, if that was true, he had Denman's preliminary hearing testimony. That's correct. And at that, so what he knew when he was going forward was that, or what he thought he knew, was that Denman was going to testify that his client had a gun. That's correct. And he didn't know that Denman was going to change his testimony when he came to the trial. That's correct. But he also was, he was, Denman testified and after Denman testified, counsel is able to assess what's going on at trial and is able to make determinations. Is that reasonable after Denman changes his testimony to just rely on that? Yes. Even though it's, he's clearly giving contradictory testimony in the two occasions? It's reasonable to conclude that based on Denman's trial testimony, in which he repeatedly asserted that I never saw Rose with a gun, that that's not going to, that that's not. But he also testified that he believed he had a gun. He did. He said, I believed he had a gun based on the circumstances, but I never saw him with a gun. So ultimately, a jury could be left with the conclusion, he's speculating that Rose had a gun and he doesn't need to try to bolster that. He doesn't need to undermine that. Counsel doesn't need to undermine that because he can then make the arguments, look, he's all over the map, but what you do have is him repeatedly testifying, I did not see him with a gun. And therefore, the jury can conclude from that, he didn't have a gun. Plus, coupled with the fact that Denman repeatedly testified that Rose never did any violence to him and was a passive participant, coupled with Rose's initial trial testimony that he was a passive participant, that he was acting under duress, trial counsel could make a reasonable determination in the heat of the battle of the trial that he did not need to call Bell or Bolden to testify. Is the analysis the same regard to the videotape, which according to the petition was available to counsel prior to trial? I think that that's also correct, that with respect to the videotape, there's a couple of pieces to that. First, we have an allegation that counsel was given the videotape before trial. Counsel can view that and can make a determination what to do with that, if indeed that video existed. But we also have the fact that that video, the fact that it was even brought up only later, much later, suggests that this is just fabrication. We don't know. We don't know. And so if we don't know, why not have an evidentiary hearing to sort this out once and for all? Because we don't need an evidentiary hearing because there should have been more diligence provided by Rose in his prior petitions. He should have presented this evidence at the soonest possible juncture. We don't know when he learned about it, do we? We don't know, but we can infer. Well, hold on. That's always dangerous. It can be. Okay. So I think there's a lot of things we don't know. And the reason why we have evidentiary hearings is to learn what we don't know. I think your strongest argument on this one is not to infer things, but to say why, well, maybe ultimately it doesn't matter. That's true. It ultimately wouldn't. Why would it not matter in this case? Because it wouldn't affect the prejudice analysis at all. It wouldn't undermine what ultimately happened here. What exactly is on the video? More of what Denman said, that Rose didn't do him any violence. And there's a suggestion in the video that he wanted Rose in prison. That's not particularly surprising. Any juror is going to conclude that, given the fact that Denman testified on behalf of the prosecution. Wasn't there something about him framing Rose? Those were things that Bell and Bolden had said that Denman told them. And that was something that was presented early on in the, actually it wasn't presented in the Marsden, it was presented later. But it was something that was never brought, it was never fully litigated in the Marsden hearing. But again, it goes back to the idea that the jury already knows that Denman is testifying on behalf of the prosecution. So to suggest that Denman had said to Bolden or to Bell that, yeah, I'm glad that he's gone to prison or that he's in jail. That doesn't add anything to what the jury already knows. And whatever Bell and Bolden could have testified to still would have been hearsay and still would have been inadmissible. Why wouldn't it be used to impeach the credibility of the government's witness? Not for the truth, but to say this guy has a motive to lie. I suppose it could have been admitted in that respect. But again, it would not have undermined what the jury already would have known given that Denman is testifying on behalf of the prosecution. And the fact that they know the relationships of the parties that are at play here. They know that Denman is a friend of Rose. And they know that Rose has betrayed Denman according to Denman's testimony. So it doesn't add anything. There's no prejudice here. When you take that together with all of the evidence that does show that Rose is an active participant, that he was not acting under duress, that he never did anything to try to stop this. He never did anything to suggest that he was an unwilling participant. The fact that he ends up in Las Vegas later with the bad guys as Judge Owens, you commented earlier, that also undermines the idea that he's acting under duress. And with respect to his mom, Ms. Ramos, who might have testified that she had contact or her daughter had contacted Rose to let them know that there were gang members outside and that they felt threatened. That's just what Rose had already testified to. And counsel made a reasonable tactical decision, even though he had Ms. Ramos on standby to call her. He made a reasonable decision not to call her because he does not want to try to highlight evidence that could then be impeached. The entire – like counsel has suggested, this case turned on credibility. Anything that counsel does to undermine his own client's credibility is going to be a problem in this case. And by calling Ramos to then testify and provide additional fodder for why Rose left Bakersfield to go to Las Vegas just opens the door again to the prosecutor deciding, I will now introduce this evidence that I have that suggests that Rose was lying as to his reason and rationale for leaving Bakersfield. So counsel was making reasonable tactical decisions in trying to save the credibility of his client, had a weak case, and did the best that he could with that case. And we can't sit here with 20-20 hindsight and criticize counsel for the reasonable – objectively reasonable decisions that counsel made. What's your response to the Horton case on the question of 2254E2? So I think that we need to understand, taking a step back, looking at what California state habeas practice entails, we provide a tremendous amount of opportunity for factual development. Just because an evidentiary hearing is not granted does not mean that a petitioner is unable to present facts and evidence. So there's a suggestion that in California you don't get to the stage where you can actually request an evidentiary hearing unless they've granted you the right to file, the petitioner filed the evidence. Is that correct under California law? That's not quite correct. The way that it works is that when a petitioner files a petition for state habeas relief, California law requires the petitioner to make a prima facie showing that relief should be established and asks the petitioner to append all reasonably available documentary evidence, declarations, affidavits, anything that can be presented to the court to help support the claims that are in the petition. Is that step discretionary? Do you file your petition? I guess where I'm really going to is we have this petition that was filed, second petition, and it says evidentiary hearing requested. Was that the correct stage to be requesting an evidentiary hearing, or is there one step further that you need to go? No, you can request the evidentiary hearing at the outset. It's just check the box, I want an evidentiary hearing on this, but you're still required to establish the prima facie case under people v. Duvall. And so when you've established that prima facie case that, yeah, there's a likelihood that relief may be available here, what happens then is that the court grants, it'll ask for one of two things from the respondent. It'll either ask for an informal response or it'll go the formal route and issue what's called an order to show cause. If the order to show cause is granted or issued, then we do go towards an evidentiary hearing because the court feels that there is additional material that needs to be fleshed out. But if we don't get to that stage because there has been an insufficient showing at the prima facie level stage, that first stage, then we don't get there. So what I'm trying to highlight is that we've tried to make it as easy and efficient for a petitioner as possible. Present everything that you have up front and make your best, strongest case. If there's something there, then you go on to an evidentiary hearing. It's a matter of preserving judicial resources. Here, Rose did none of that. He was exactly like the defendant in the Baja case that I cited in the supplemental brief. But I think that then circles back to the question of at what point he discovered the existence of this video. I mean, I understand your argument, and it's a compelling one, particularly under deferential review, that there was a tactical decision made not to call witnesses to try to undermine the primary prosecution witness because, as you know, trials are messy, and these witnesses could have kind of mucked up the defense case. So why not just rest on similar statements that Mr. Denman already admitted on the stand and utilize that to craft the closing argument? I think there's a compelling argument that the video, though, falls in a different category because if you have a video that basically says what the petitioner claims it says, Denman essentially admitting that he framed the petitioner, you could present that and all you need is to lay the appropriate foundation so it doesn't have some of the same messiness of witnesses being subject to cross-examination. But on the record that we have now, we don't know whether that was a total failure to review the video and make a proper strategic call because we don't have counsel's explanation as to why he didn't review it. And so I think on that portion of it, why not have an evidentiary to figure out what counsel's thinking was with regard to the video, which I think falls in a slightly different category, potentially, than the other defense witnesses that were proffered? I think that you actually answered the question in what you just stated. We don't have anything from defense counsel. We don't have any declarations whatsoever about anything. All that this petitioner had to do was ask his trial attorney, can you please provide a declaration as to the things that you did do in preparation for trial, the things that you reviewed, the witnesses that you could have called, and the rationale for why you didn't call them or present whatever evidence you had. That kind of declaration could have helped. That would have also established a modicum of diligence here. He provided nothing like that. And so on that basis, there is no diligence. But it doesn't make any sense to go back. I mean, the trial counsel, if he was, if he did perform deficiently, he's not going to give Rose a declaration attesting to his deficient performance. Why would he do that? Can't attorneys do this all the time? Defense attorneys do this quite regularly where they'll fall on their sword. Well, they'll go ahead and try to help their client because they continue to feel that loyalty and duty to their client to help their client out. So it's not uncommon for defense attorneys to present declarations declaring what they did or did not do. I should have used the video tape. I became aware of it and I should have used it. And even in this case, defense counsel said, look, maybe it wasn't such a great idea for me not to call Ms. Ramos to testify. He actually acknowledged that possibly that may or may not have been a good call. Was that during the Marsden? That was during the Marsden hearing. But counsel also responds specifically to what the issues that were raised. And because the failure to call these witnesses were presented directly as a ground for substitution of counsel or ineffective assistance of counsel, then he responded directly to that. I don't know that he would then, you know, search his entire file for saying, oh, yes, and there was a video tape. No one's talked about it before, but here's why I didn't do that. All right. And and that also that also lends itself to the fact that that is still speculative. And the district court recognizes much because Mr. Ramos' claims developed and became more and more self-serving as time went on. I see that my time has expired. And if there are no further questions, we would submit. All right. Thank you very much, counsel. Just very briefly about California habeas process, what the warden discussed is the California standard, which is that petitioners are expected to provide reasonably available evidence. And I think there was a lot of discussion about what was available to an indigent incarcerated petitioner. And I think it you know, I'm sure the court has seen a lot of ineffective assistance claims and some of them had declarations from defense attorneys, but probably just as many of them had defense attorneys who refused. And I don't think that we're in a position where we can assume that Mr. Rose would have been able to obtain a declaration from the defense attorney that he was calling deficient. All this required, and again, at that point, he had no access to any kind of factual development. He didn't have subpoena power. It's not just about an evidentiary hearing. So he didn't have the ability to, you know, obtain through court order, counsel's files, videos, etc. What he was required to do is allege a prima facie case and his allegations, according to state law, are presumed true. And his factual allegations were quite detailed. The warden has cited Baja a few times, and I think that case is distinguishable in two important ways. First, the petitioner in Baja had counsel during his state post-conviction proceedings. And second, he never requested an evidentiary hearing at all. Finally, I just wanted to clarify one tidbit that I think Your Honor already mentioned about the videotape. Mr. Rose's allegation, which should have been presumed true, was first, that counsel didn't view the tape at all. And second, it wasn't just that he wanted Rose in jail. It was that, the quote is, bragging about having Mr. Rose incarcerated despite his knowing that petitioner played no true role in the crimes. I think that evidence of that kind of admission would have been extremely damaging to Mr. Denman's credibility as evidence of his bias. So, in the petitioner's actual petition, when he talks about the video, he says it's on the internet. Yes, Your Honor. So, wouldn't anybody have access to it any time? I mean, it's not like we're talking about a cassette, that only one person has this copy of this interview. It was something on the internet. Do you mean, so anyone with access to the internet would? I don't think we could assume that Mr. Rose, incarcerated, had that access. No, I'm not assuming that. I'm just wondering why we don't know anything about this video, if you could access it on the internet. Well, Mr. Rose has been pro se and was pro se in the district court as well. Counsel was only appointed very late in the district court proceeding for a strictly legal briefing about Rogers. And so, there hasn't been... You're saying no one has searched the internet to see if the video's still there or anything of that nature? The video's not in the record. Well, and counsel, I take it when people say the videos on the internet, that can mean different things. It could be on what we think of as YouTube, where I guess it is viewable to the world, but it also could be on some sort of file sharing Napster type service, where only if you have nowhere to go, you can find it. We just know it's somewhere in the ether, how accessible it is, we don't know at this point. Yes, Your Honor. All right. Thank you very much, counsel. Rose versus Hedgepeth will be submitted.
judges: Wardlaw, Nguyen, Owens